# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Joel Grogan Zigler,<br><br>Defendant. | Case No. 11-cr-304 (SRN/JSM)<br><br><br>**ORDER** |

Gina L. Allery, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Joel Grogan Zigler, Reg. No. 16063-041, FCI-Elkton, P.O. Box 10, Lisbon, OH, 44432, Pro Se Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Joel Grogan Zigler's Pro Se Motions for Release (("Motion for Release") [Doc. Nos. 60, 61]) pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Zigler seeks compassionate release and requests that the Court reduce his prison sentence to home confinement because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Zigler's Motion for Release. (Gov't's Opp'n [Doc. No. 65].)

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

## I.  BACKGROUND

### A.  Procedural and Factual Background

On January 30, 2012, Mr. Zigler pleaded guilty to one count of production of child pornography, pursuant to a Plea Agreement. (Gov't's Opp'n at 6.) As noted in the Plea Agreement, Mr. Zigler reserved his right to argue that a previous 1988 Minnesota State conviction for attempted use of a minor in a sexual performance did not qualify as a conviction triggering the enhanced statutory penalties under 18 U.S.C. § 2251(a). (*Id*. at 6-7.) On May 22, 2012, this Court sentenced him to 300 months of imprisonment. (*See* Sentencing Judgment [Doc. No. 42].) Mr. Zigler is currently incarcerated at FCI-Elkton in Ohio. He has a projected release date of January 10, 2033. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 26, 2020).

### B.  FCI-Elkton

FCI-Elkton has had difficulty containing the spread of COVID-19. Indeed, the Attorney General has highlighted FCI-Elkton as one of three facilities where the BOP is "experiencing significant levels of infection . . . " William P. Barr, Attorney General, Memorandum for Director of Bureau Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The Bureau of Prisons ("BOP") website lists FCI-Elkton as having the second highest level of inmate infections among BOP facilities, and the third highest level of inmate deaths. *See* COVID-19: Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed June 26, 2020).

In connection with a federal class action habeas petition commenced by FCI-Elkton inmates in the Northern District of Ohio, the district court specifically found that the number of reported cases of inmate infections likely understates the number of actual cases "given the paltry number of tests the federal government has made available for the testing of Elkton's inmates." *Wilson v. Williams,* -- F. Supp. 3d --, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020). Based on the threat posed by COVID-19, the district court identified a subclass of FCI-Elkton inmates who—due to age and/or certain medical conditions—were particularly vulnerable to complications, including death, if they contracted the virus, and granted certain preliminary injunctive relief, including requiring the BOP to evaluate the subclass members for compassionate release and transfer out of FCI-Elkton. *Id.* at *6, 10-11.

The district court's carve-out of a medically vulnerable subclass of Elkton inmates still appears instructive here, even though the Sixth Circuit recently vacated the preliminary injunction order. *See Wilson v. Williams*, -- F. Supp. 3d --, No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020). Although decided in the context of an alleged Eighth Amendment violation, which uniquely requires a showing of a prison official's "deliberate indifference" to a substantial risk of serious harm, the Sixth Circuit made two relevant findings when determining that petitioners were unlikely to succeed on the merits of their claim. *Id.* at *5-8.

In reviewing the conditions at Elkton, for instance, the Sixth Circuit evaluated the BOP's six-phase plan to mitigate the risk of COVID-19 spreading at the facility. Phase One of the BOP's action plan involved "creating a strategic response plan" in January 2020.

3

*Id*. at *2.  The BOP implemented Phase Two on March 13, 2020, "which suspended social and legal visits, inmate facility transfers, staff travel and training, contractor access, and volunteer visits."  *Id*.  Elkton then began implementing Phase Two "health screening of arriving inmates and staff for COVID-19 symptoms and risk factors on March 22."  *Id*.  Additionally, the BOP modified operations to "maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures."  *Id*.

Phase Three involved "inventorying the BOP's cleaning, sanitation, and medical supplies."  *Id*.  In Phase Four, beginning on March 26, 2020, the BOP "expanded its initial screening procedures to mandate use of a screening tool and temperature check, and require asymptomatic arrivals to be placed in quarantine for fourteen days and symptomatic arrivals to be isolated until they tested negative for the virus or were cleared by medical staff."  *Id*.  Five days later, in Phase Five, the BOP required all inmates to be secured to their quarters for a fourteen-day period with limited access to the commissary, laundry, showers, telephone, and other services."  *Id*.  The BOP "also coordinated with the U.S. Marshals Service to decrease incoming arrivals during this period."  *Id*.  Phase Six extended the Phase-Five period through May 18, 2020.  *Id*.

The Sixth Circuit first reviewed the above-measures that the BOP had taken and found they are a "reasonable response to the risk the virus posed."  *Id*. at *8.  But, it also acknowledged that "the transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing . . . and the medically vulnerable subclass' health risks" present conditions of incarceration "posing a substantial risk of serious harm."  *Id*. at *7.

4

### C.  Parties' Arguments

Mr. Zigler does not, however, appear to be currently identified by the BOP in *Wilson* as a member of the medically vulnerable subclass. *Wilson v. Williams*, No. 20-cv-00794 [Doc. No. 35] (N.D. Ohio Apr. 30, 2020). Nonetheless, in his motion, he asserts that in light of the severe risks associated with the COVID-19 outbreak at FCI-Elkton, he is eligible for release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot. [Doc. No. 60] at 1.) He contends that the prison is providing inadequate protection for inmates and that his medical diagnoses place him at a greater risk should he contract COVID-19 according to the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC"), (*Id.* at 1-4.) Specifically, he asserts that he has a "heart murmur, sleep apnea, history of smoking, [] pneumonia, [] anxiety and depression." (*Id.* at 5-6) (further stating that he has health issues with "migraine, umbilical hernia and borderline high cholesterol."). Mr. Zigler argues that these risks present "extraordinary and compelling" reasons to grant his request for compassionate release. (*Id.* at 8.)

The Government opposes Mr. Zigler's motion on three main grounds. First, the Government argues that his motion should be denied because he has failed to exhaust his administrative remedies or alternatively that he failed to wait 30 days from the warden's receipt of a request for release before seeking judicial intervention. (Gov't's Opp'n at 11.) As a result, the Government argues that the Court lacks jurisdiction. (*Id.* at 11-13.) And, even if administrative exhaustion requirement is not "viewed as jurisdictional" by the Court, the Government maintains the requirement is a "mandatory claim-processing rule" which must be enforced once properly raised. (*Id.*) (citing *Eberhart v. United States*, 546

5

U.S. 12, 19 (2005)). Second, the Government contends that Mr. Zigler's motion fails on the merits. (*Id*. at 21–29.) Third, the Government contends that the Court has no authority to order the BOP to place Mr. Zigler in home confinement.[1] (*Id*. at 26-29.) Finally, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities. (*Id*. at 2-5.)

## II.    DISCUSSION

### A.    The Law

"[A] court may not modify a term of imprisonment once it has been imposed" except pursuant to statute. *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[2] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v.*

---

[1] The Government appears to misapprehend the nature of the relief requested by Mr. Zigler in making this argument. (*See* Def.'s Mot. at 1-3.) While the Court is not authorized to order the BOP to place Defendant on home confinement, "if the standard set forth at 18 U.S.C. § 3582(c)(1)(A) is satisfied, the Court is authorized to reduce Defendant's prison sentence to time served and impose home detention or incarceration as a condition of supervised release." *United States v. McIndoo*, --F. Supp. 3d--, 2020 WL 2201970, at *3 n.6 (W.D.N.Y. May 6, 2020).

[2] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

*Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

7

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id.* The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [3] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are

---

[3] Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); (further citations omitted)).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

**B.    Analysis**

**1.    Exhaustion of Administrative Remedies**

The Court first considers whether it has the authority to grant Defendant's motion. As explained above, the compassionate release statute expressly provides that a court may only reduce a defendant's sentence pursuant to the provisions of the statute after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18

9

U.S.C. § 3582(c)(1)(A). In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or demonstrate that 30 days have elapsed since he submitted a request for a motion to the facility's warden.

Although the Government argues that Mr. Zigler has not made an administrative compassionate release request with the BOP, (Gov't's Opp'n at 7), he argues to the contrary in his motion. Mr. Zigler asserts that there were "no forms available for the internal administrative process and no staff available at FCI Elkton to process the forms," but that he sent an electronic request to the "Unit Team and Warden for consideration of home confinement." (Def.'s Mot. at 3.) In his reply, he further asserts, and submits documentation, that the Warden denied his electronic request for compassionate release on April 27, 2020, and again on April 28, 2020. (Def.'s Reply [Doc. No. 71] at 1, Exs. A-C.)

The Court therefore finds that more than 30 days have lapsed from the receipt of Mr. Zigler's request for release by the warden, which is all the statute appears to require before he can proceed in district court. 18 U.S.C. § 3582(c)(1)(A). Put differently, the BOP has been afforded more than 30 days to review Mr. Zigler's electronic administrative request for compassionate release, therefore "satisfying the terms of the statute." *See*, *e.g.*, *United States v. Olejniczak*, 2020 WL 2846591 (W.D.N.Y. June 2, 2020) (ruling on the merits of a compassionate release motion because thirty days elapsed from the warden's receipt of defendant's administrative request for compassionate release); *United States v. Shabudin*, --F. Supp. 3d--, 2020 WL 2464751, at *1 (N.D. Cal. May 12, 2020) (ruling on the merits of a compassionate release motion when filed two days after request was submitted to the warden because thirty days had expired from inmate's administrative

10

request). Because Mr. Zigler appears to have exhausted his administrative remedies in this regard, the Court may therefore turn to the merits of his motion.

## 2. Compassionate Release Under § 3582(c)(1)(A)

The Court next considers whether release under these facts is warranted. As explained above, the Sentencing Commission's guidance provides that an inmate's medical condition can, alone, sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A). U.S.S.G. § 1B1.13 cmt. 1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify compassionate release. U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D).

Mr. Zigler argues that the COVID-19 pandemic, in combination with his medical conditions, warrants compassionate release. Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, especially at FCI-Elkton, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the

11

context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, Mr. Zigler fails to present extraordinary and compelling reasons for his release. Mr. Zigler, who is 55 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, Coronavirus Disease 2019: People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed June 26, 2020). Nonetheless, he asserts that he has several conditions, including a heart murmur, sleep apnea, high cholesterol, esophageal reflux, pneumonia and history of smoking, which make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Mot. at 5; Def.'s Reply at 6-8.)

The Court disagrees for two reasons. First, the documentation Mr. Zigler offers does not sufficiently demonstrate any of his ongoing health concerns. For instance, although he asserts that he has a heart murmur, he only submits one echocardiogram conducted in June of 2019 and attempts to explain the test results without referring to any

medical authority.[4] (Def.'s Reply at 6-7, Ex. K.)  None of his other alleged conditions are documented.  *See United States v. Black*, No. 5:18-cr-646-1, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (no extraordinary and compelling reason where the defendant offered no medical records substantiating his claim of being treated for high blood pressure and diabetes); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *4 (N.D. Ohio Apr. 17, 2020) (no extraordinary and compelling reason where the defendant offered no medical records of claimed asthma); *Shamilov*, 2020 WL 2029600 at *2-3 (citing *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 1472320, at *2 (D.N.M Apr. 3, 2019)) (denying motion for compassionate release where inmate provided no documentation of underlying conditions).  And, the Government in fact submitted Defendant's medical records, which appear to indicate only that he is currently on medication for anxiety and depression and his sleep apnea is in remission. ([Doc. No. 67] at 2, 44.)  There is no reference to either a history of smoking, heart murmur, or pneumonia in his records.  (*Id.*)

Second, even assuming his underlying medical conditions exist, none of the conditions have been identified by the CDC as specifically increasing the risk for developing serious illness from COVID-19.  Although Mr. Zigler contests that his medical records demonstrate his sleep apnea is in remission, (Def.'s Reply at 6), asserting that he

---

[4]   The Court further notes that the echocardiogram appears to indicate that his cardiac chambers are within "normal size"; his left ventricular function is "preserved;" and his "mitral regurgitation; tricuspid regurgitation and aortic insufficiency" are described as "mild."  ([Doc. No. 71] Def.'s Ex. K.)  There is nothing in the record before the Court that suggests any of these results are clinically significant.

has been denied "surgery" and a "sleep study" test by the BOP for this condition, this argument appears to miss the point. The CDC does not identify sleep apnea as specifically increasing the risk of complications from the virus. Although the CDC lists those with "serious heart conditions" and who are "immunocompromised," which includes smokers, as individuals with a higher risk for severe illness from the virus, there is nothing in the record before the Court that suggests his heart murmur qualifies as a serious heart condition. Moreover, Mr. Zigler has proffered nothing to indicate that his particular history of smoking has left him immunocompromised or that it has otherwise impacted his health. The Court is therefore unable to find that Mr. Zigler is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his conditions.

As for whether Mr. Zigler has a heightened risk of contracting the virus based on the conditions of the facility, the Government expressly acknowledges that he is "being held at a facility where a notable outbreak has occurred." (Gov't's Opp'n at 28.) Nonetheless, the Court agrees with the findings of other courts that this risk alone is insufficient to automatically warrant compassionate release. *See*, *e.g*., *United States v. Mobasseri,* 2020 WL 3026070, at *3-4 (N.D. Ohio June 5, 2020) (denying motion for compassionate release despite acknowledging that the presence of COVID-19 at Elkton weighs in favor of release); *United States v. Schultz*, 2020 WL 2764193 at *7-8 (W.D.N.Y. May 28, 2020) (denying compassionate release of an inmate detained at FCI-Elkton because § 3553(a) factors weighed against release and inmate was a danger to community); *United States v. Murphy*, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying motion for compassionate release of an inmate with asthma detained at FCI-Elkton because

14

his asthma appeared to be managed by prescribed inhaler and § 3553(a) factors weighed against release); *McIndoo*, 2020 WL 2201970, at *9 (denying motion for compassionate release of an inmate detained at FCI-Elkton due to failure to exhaust administrative remedies); *Black*, 2020 WL 1930149, at *3 (denying motion for compassionate release of inmate detained at FCI-Elkton, in part, because inmate failed to "establish that he is at a higher risk of contracting COVID-19.").

The Court therefore finds that Mr. Zigler's medical condition does not warrant compassionate release. The Court further finds that no other compelling circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553 factors to Mr. Zigler. While Mr. Zigler's record during imprisonment demonstrates his significant work regarding rehabilitation, he has only served approximately one-third of his total sentence. Cutting his sentence by nearly two-thirds would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *Schultz*, 2020 WL 2764193, at *7 (citing 18 U.S.C § 3553 (a)).

Indeed, as noted in his presentence investigation report, Mr. Zigler's underlying offense involved directly initiating contact with a 17-year-old boy on myspace.com, and then luring him and his 17-year-old friend to a hotel, where Mr. Zigler supplied them with alcohol and marijuana and showed them pornography. (Gov't's Opp'n at 6.) He then videotaped both boys masturbating and paid them $150 each. (*Id.*) A few weeks later, he brought the boys to the same hotel and performed oral sex on both of them. (*Id.*) After one of the boys reported the incident to his parents and law enforcement, a search warrant

15

revealed photos of one boy and video clips of the other at Mr. Zigler's residence. (*Id.*) Although he continues to assert, in his reply, that he was unaware that both boys were minors, (Def.'s Reply at 4-5), he admitted at his sentencing that he should have "verif[ied] their age[s]" by "checking" each of their "ID," but did not. ([Doc. No. 54] at 21.) Moreover, this assertion carries less weight when viewed against his prior state conviction also involving minors, in which he targeted victims in a high school locker room. (*Id.* at 24.)

For this disturbing and egregious conduct, a fair, just, and reasonable sentence was imposed which, in this Court's view, would be severely undermined by a reduction to time served after only approximately 103 months.

Accordingly, for all of the reasons stated above, Defendant's Motion for Release is denied.

### III.   ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motions for Release [Doc. Nos. 60, 61] are **DENIED**.

Dated:   June 26, 2020                                           s/Susan Richard Nelson
                                                                 SUSAN RICHARD NELSON
                                                                 United States District Judge